**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **MARYANNE HURLEY, o/b/o** | ) | |
| **MICHAEL HURLEY, Deceased** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 09 C 4997** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | **Magistrate Judge Morton Denlow** |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION AND ORDER

Claimant Maryanne Hurley ("Ms. Hurley"), o/b/o Michael Hurley, deceased, ("Mr. Hurley") brings this action under 42 U.S.C. § 405(g), seeking reversal or remand of the decision by Defendant Michael J. Astrue, Commissioner of Social Security ("Defendant" or "Commissioner"), denying Mr. Hurley's application for Disability Insurance Benefits ("DIB"). Ms. Hurley raises the following issues: (1) whether the Administrative Law Judge ("ALJ") erred in failing to find a closed period of disability lasting longer than twelve months; (2) whether the ALJ failed to properly weigh the evidence from Mr. Hurley's treating physician; (3) whether the ALJ's credibility finding was "patently wrong;" and (4) whether the ALJ properly considered Mr. Hurley's limitations due to asthma. The Commissioner raises the issue of whether Mr. Hurley's application for DIB was untimely, thus precluding any benefits. For the following reasons, the Court finds that Mr. Hurley's

application was untimely and therefore affirms the ALJ's decision, denies Claimant's request to reverse or remand the decision of the Commissioner, and grants the Commissioner's motion for summary judgment.

## I. BACKGROUND FACTS

### A.      Procedural History

Mr. Hurley initially applied for DIB on March 20, 2007, alleging a disability onset date of August 9, 2003.  R. 102-11, 134, 285.  Mr. Hurley was 52 years old and employed as a Cable Installer on the alleged onset date, when he injured his lower back and shoulder while picking up a ladder.  R. 135, 285.  Mr. Hurley cited disability due to lower back pain, high blood pressure, diabetes, asthma, leg pain, high cholesterol, degenerative arthritis, shortness of breath, and chronic leg and back pain.  R. 134.  The Social Security Administration ("SSA") denied his application on May 24, 2007. R. 50-53.  Mr. Hurley then filed a request for reconsideration, which was denied on August 24, 2007.  R. 57-59. Thereafter, Mr. Hurley requested a hearing before an ALJ.  R. 60-61.  Mr. Hurley died on March 7, 2008 in a car accident, and his widow, Ms. Hurley, filed substitution of party forms. R. 47-49, 122-23.

On October 20, 2008, Administrative Law Judge Mary Ann Poulose ("ALJ") presided over a hearing at which Ms. Hurley appeared with her attorney, Christopher Bode, and testified.  R. 26-44.  In addition to Ms. Hurley, Edward Cadell, a vocational expert, also testified.  *Id.*  On February 3, 2009, the ALJ issued a decision finding Mr. Hurley was not disabled under the Social Security Act.  R. 13-25.  Specifically, the ALJ found Mr. Hurley had "the residual functional capacity to perform a medium work as defined in 20 CFR

404.1567(c)," subject to certain limitations, and that "there were jobs that existed in significant numbers in the national economy that the claimant could have performed." R. 20, 23.

Ms. Hurley then filed for review of the ALJ's decision to the Appeals Council, which denied Ms. Hurley's request on June 20, 2009. R. 1-3. The ALJ's decision therefore became the final decision of the Commissioner. Ms. Hurley subsequently filed this action for review pursuant to 42 U.S.C. § 405(g).

**B.     Hearing Testimony – October 20, 2008**

**1.     Maryanne Hurley**

Ms. Hurley testified at the hearing about her observations of Mr. Hurley's condition. Ms. Hurley reported that Mr. Hurley made some attempts to work in 2005 and early 2006, although she could not remember the exact dates. R. 30-33. Mr. Hurley worked in security for a brief period as well as part-time supervising the rehabbing of houses. R. 30-31, 34. However, he could not sustain this work for very long and would often come home early. R. 32, 35.

Ms. Hurley further testified that Mr. Hurley's back pain was his biggest limitation. R. 35. He had difficulty getting out of bed in the morning due to back pain and arthritis in his legs. R. 36. Ms. Hurley reported that following back surgery in June 2004, Mr. Hurley's radiating pain ceased, but he continued to experience soreness. R. 35. Ms. Hurley also reported that Mr. Hurley experienced lightheadedness due to diabetes and needed to lie down frequently. R. 34. He used his inhaler for asthma quite often throughout the day. R. 36.

When asked about Mr. Hurley's daily routine, Ms. Hurley responded that he slept a lot and took various medications, including pain medications. R. 34. Mr. Hurley sometimes watched the Hurleys' grandson for short periods. *Id.* He helped Ms. Hurley "a little" with light cleaning around the house, but following the back surgery he was not able to do any of the yard work he had previously done. R. 37-38.

### 2. Edward Cadell – Vocational Expert ("VE")

Edward Cadell testified as a Vocational Expert at the hearing. R. 39. The VE noted that Mr. Hurley's past work as a laborer was unskilled at a heavy physical tolerance level, his past supervisory work with laborers was semiskilled at a heavy physical tolerance level, and his past work as maintenance worker was unskilled at a medium physical tolerance level. R. 40.

The ALJ presented the VE with a hypothetical person based on Mr. Hurley's age and past work experience who could sit for four hours a day, stand for four hours a day, needs to change positions every hour, and is limited to lifting 40 pounds maximum and 25 pounds frequently. R. 40. The VE opined that the hypothetical individual could perform work at the light physical tolerance level. *Id.* The VE identified several titles the hypothetical individual could perform, consistent with those listed in the *Dictionary of Occupational Titles* ("DOT"), including assembler (3,600 positions in the Chicago metropolitan region), hand packer (4,200 positions), and hand sorter (1,800 positions). R. 41.

The ALJ then asked whether the hypothetical individual would still be employable if he had to take breaks in addition to regularly scheduled breaks of ten minutes every two

hours.  *Id.*  The VE opined such a person would not be employable.  *Id.*

## C.    Medical Evidence

### 1.    Mr. Hurley's Statements

On a disability report supporting his March 20, 2007 initial application for benefits, Mr. Hurley reported that he experienced chronic pain, the inability to stand, sit, or walk for long periods, shortness of breath, and numbness in his legs.  R. 134.  He noted he took numerous medications, including Albuterol for asthma, Avandia, Glempride, and Metformin for Diabetes, Hydrododin for pain, Hyzarr for HBP, and Lipitor for cholesterol.  R. 139.  Mr. Hurley's highest level of education completed was 11th grade.  *Id.*  On a disability report accompanying his August 2007 request for reconsideration, Mr. Hurley stated his back pain was noticeably worse, he experienced burning sensations in his feet and swollen feet, and he had limited mobility.  R. 147.  He reported taking Vicodin for pain.  R. 150.  On a disability report accompanying his January 2008 request for a hearing, Mr. Hurley reported his pain was worse when walking, standing, and sitting, and that he could not walk 50 feet without tremendous pain.  R. 157.

### 2.    Dr. Savio Manatt ("Dr. Manatt") - Mr. Hurley's treating physician

Records dating from March 10, 2003 through December 8, 2006 show Mr. Hurley regularly saw Dr. Manatt every three to four months.  R. 200-57.  On June 16, 2003, prior to the incident at work, Mr. Hurley saw Dr. Manatt and complained of back pain, for which Dr. Manatt administered a depo-medrol injection.  R. 218.  Dr. Manatt also noted diagnoses of chronic back pain and herniated disc, hypertension, diabetes mellitus, and arthritis.  *Id.*

On August 25, 2003, Mr. Hurley complained of increased back pain following the incident at work and stated he would be seeing an orthopedic doctor. R. 217. An MRI of the lumbar spine taken on that date showed a "large protruding disc" on the right side of Mr. Hurley's lumbar spine. R. 229. Dr. Manatt prescribed Vicodin. *Id.* On November 12, 2003, Mr. Hurley returned for a follow-up visit complaining of stomach pain, and Dr. Manatt noted "[h]e is totally disabled at this present time from the workman problems." R. 216.

On July 27, 2004, Mr. Hurley reported he had lumbar surgery and "is doing well." R. 213. On January 7, 2005, Mr. Hurley had no complaints but noted he was following up with his orthopedic surgeon for back pain and going to "rehab." R. 211. On April 8, 2005, Dr. Manatt reported Mr. Hurley "is definitely feeling better" and was walking around better. R. 210. On July 25, 2005, Mr. Hurley reported "still having a lot of pain on the back and he is going to see the surgeon. He cannot get up early morning because of the pain . . . ." R. 209. Dr. Manatt also diagnosed Mr. Hurley with fatty infiltration of the liver. *Id.*

Mr. Hurley reported no further significant complaints to Dr. Manatt until April 7, 2006, when he reported pain in his neck going down to his arm. R. 206. Dr. Manatt prescribed Prednisone and Skelaxin. *Id.* Mr. Hurley continued to report neck pain in subsequent visits, and Dr. Manatt noted on June 20, 2006 that an MRI showed slight stenosis at the C4-C5 spinal level. R. 204.

### 3. Dr. Steven Mather ("Dr. Mather") - Mr. Hurley's orthopedic surgeon

Mr. Hurley first saw Dr. Mather on September 22, 2003, when he reported low back pain and bilateral leg pain following the August 9 work accident. R. 285. Mr. Hurley

reported he had had mild lower back pain in the past, but "nothing he had missed any work for." R. 285. Upon physical examination, Dr. Mather noted forward flexion of 40-50 degrees with pain, positive straight leg raise on the right at 30 degrees causing pain, and a slightly dampened right ankle reflex. R. 286. Dr. Mather reviewed an MRI that showed large disk herniation in the lumbar spine. R. 286. Dr. Mather indicated Mr. Hurley would likely require surgery at some point, but his symptoms were "not especially severe" at that time and were controlled with Vicodin. *Id.*

On October 16, 2003, Mr. Hurley continued to complain of back pain as well as neck pain resulting from the accident. R. 284-85. Dr. Mather found tenderness and spasm in the lumbar spine and pain and tenderness of the cervical spine. R. 285. On November 13, 2003, Dr. Mather took x-rays of Mr. Hurley's cervical spine, which showed mild degenerative disc disease. R. 281. His lower back and lower extremity findings remained the same. *Id.* Dr. Mather referred Mr. Hurley to Dr. Ellen Voronov for lumbar epidurals, which she administered on November 19, 2003 and December 10, 2003, but Mr. Hurley reported he experienced no relief. R. 279, 285, 292-93.

On January 12 and March 1, 2004, Dr. Mather reported Mr. Hurley's symptoms continued and that he would likely require a diskectomy. R. 276-78. On June 1, 2004, Dr. Mather performed a lumbar laminectomy, removal of the disk herniation, and lumbar fusion. R. 289-91.

Six weeks after the surgery, on July 19, 2004, Dr. Mather reported Mr. Hurley had approximately 50% normal range of motion in the lumbar spine. R. 274. Mr. Hurley wore

a prescribed back brace and took three to four Norco a day. R. 273-74. By August 30, 2004, Mr. Hurley reported his lower back was "coming along," and Dr. Mather found his lumbar examination was "relatively unremarkable" with good range of motion and normal motor and neurological exams. R. 273. Examination of the cervical spine revealed no particular symptoms. *Id.* X-rays taken on that date showed "solid progressing" of the lumbar fusion. *Id.* On October 11, 2004, Mr. Hurley continued to report some lower back pain. R. 271. Dr. Mather noted a negative straight leg raise and that Mr. Hurley appeared to be making progress with prescribed physical therapy. R. 272.

On November 15, 2004, Mr. Hurley continued to complain of pain, but Dr. Mather noted the complaints were mild, the range of motion in his lumbar spine was normal, and he was not taking any pain medication. R. 270-71. Dr. Mather indicated Mr. Hurley could be "graduated into a work-conditioning program 3 days a week for 4 weeks and then followed by a work-hardening program 5 days a week for 4 weeks." R. 271. On January 28, 2005, Mr. Hurley reported having difficulty with the work-conditioning program. R. 270. Dr. Mather went over the work conditioning reports, which showed Mr. Hurley was "able to function at the heavy-duty level at this point." *Id*. Dr. Mather thus opined that Mr. Hurley should be "at around the 40-pound lifting limits or thereabouts." *Id.*

On October 27, 2005, Mr. Hurley reported failed attempts to work because he could not stand for more than four hours without significant lower back pain. R. 268. Dr. Mather found normal motor and neurological examination, negative straight leg raising, and normal gait upon examination. R. 268. Dr. Mather noted that "[p]atient has asked for more

restrictions, and therefore, we will change this to a chance to alternate between sitting and standing, no driving greater than one hour . . . 40-pound lifting limit. No standing greater than four hours." *Id.* Mr. Hurley did not see Dr. Mather again until February 5, 2007, when he came in reporting pain from a January 22, 2007 car accident. R. 267. Upon examination and review of x-rays, Dr. Mather opined the pain appeared to be soft-tissue related. R. 268.

### 4.     Reviewing Physicians

On May 22, 2007, medical consultant Dr. Virgilio Pilapil ("Dr. Pilapil") reviewed Mr. Hurley's medical records and completed a Physical Residual Functional Capacity Assessment at the behest of the SSA. R. 294-301. Dr. Pilapil opined Mr. Hurley could occasionally lift 50 pounds, frequently lift 25 pounds, stand for six hours in an eight-hour workday, and sit for six hours in an eight-hour workday. R. 295. Dr. Pilapil found no manipulative, visual, or communicative limitations. R. 297-98. Dr. Pilapil did find that Mr. Hurley should only occasionally climb and balance, but otherwise had no postural limitations. R. 296. Dr. Pilapil found Mr. Hurley should avoid concentrated exposure to "fumes, odors, gases, poor ventilation, etc." R. 298.

On August 23, 2007, Dr. Robert Patey reviewed Mr. Hurley's medical records pursuant to the request for reconsideration and affirmed Dr. Pilapil's RFC. R. 302-05. Dr. Patey found that although updated medical evidence had been provided containing allegations of worsening treatment, none of these related to the treatment prior to the DLI. R. 304.

### D.     The ALJ's Decision – February 3, 2009

Following a hearing and a review of the medical evidence, the ALJ rendered an unfavorable decision upholding denial of Mr. Hurley's application for DIB. R. 13-25. The ALJ initially found that Mr. Hurley's Date Last Insured ("DLI") was June 30, 2005, and thus that it must be established he was disabled on or before that date to qualify for benefits. R. 16. The ALJ then reviewed Mr. Hurley's application under the familiar five-step sequential analysis. R. 17-25; *see infra*, Part II, B.

At step one, the ALJ found Mr. Hurley had not engaged in substantial gainful activity since August 9, 2003, the alleged onset date, through June 30, 2005, the DLI. R. 18. At step two, the ALJ found Mr. Hurley had the severe impairment of lumbar disc herniation with radiculopathy. *Id.* At step three, the ALJ found Mr. Hurley did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. R. 19. The ALJ then considered Mr. Hurley's residual functioning capacity ("RFC")[1] and adopted the limitations Dr. Mather placed on Mr. Hurley in October 2005. R.20. The ALJ found Mr. Hurley capable of performing "medium work[2] . . . except lifting was limited to 25 pounds frequently and 40 pounds occasionally, sitting was limited to four hours in an eight-hour workday, and standing was limited to four hours in an eight-hour workday; subject to the need to change position once every hour." *Id.*

---

[1] A residual functional capacity assessment is the most that a person can do despite their physical and mental limitations. The Social Security Administration assesses a person's residual functional capacity based on all of the relevant evidence in his or her case record. 20 § C.F.R.404.1545(a).

[2] Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, the SSA determines that he or she can also do sedentary and light work. 20 CFR 404.1567(c).

In making the RFC finding, the ALJ found that Mr. Hurley's medically determinable impairment could reasonably be expected to cause his alleged symptoms. R. 21. However, she went on to find that the statements made by Mr. Hurley in his application and Ms. Hurley at the hearing concerning the intensity, persistence, and limiting effects of those symptoms were not fully credible. *Id.* The ALJ concluded that while Ms. Hurley testified to Mr. Hurley's limited daily activities, "it is difficult to say with any certainty whether these limits were as bad in 2005 as they were in 2006 when he started getting neck pain or in 2007 after he was involved in a motor vehicle accident." *Id.*

The ALJ therefore considered contemporaneous treatment records from Drs. Manatt and Mather in 2004 and 2005, as those related to the time period Mr. Hurley was still insured for the purposes of DIB. *Id.* The ALJ noted that many of Dr. Manatt's treatment records from 2003-2005 did not include complaints of back pain. R. 21-22. Complaints of neck pain did not appear until April 7, 2006. R. 22. The ALJ then considered Dr. Mather's treatment notes from October 2003 noting pain in the lower back radiating to the legs, for which surgery was performed in June 2004. *Id.* The ALJ considered Dr. Mather's notes from August 30, 2004 showing Mr. Hurley had some soreness but good range of motion, and notes from November 14, 2004 showing Mr. Hurley was doing fairly well with some continued complaints of discomfort. R. 21-22. Finally, the ALJ considered Dr. Mather's January 28, 2005 report releasing Mr. Hurley to work with a 40-pound lifting limit and no excessive bending or twisting, which he modified on October 27, 2005 at Mr. Hurley's request to include an alternating sit/stand option, no driving for more than one hour, and no standing

for more than four hours.  R. 22.

In making the RFC finding, the ALJ also considered the opinions of Mr. Hurley's treating physicians and state agency reviewing physicians.  R. 21, 22-23.  She noted the state agency reviewing physician consultants opined Mr. Hurley had the RFC to perform "substantially the full range of medium work."  R. 23.  However, she gave "greater weight" to the opinion of Dr. Mather over the state agency reviewers.  *Id.*  The ALJ concluded that since "there are no other opinions identifying greater limitations or restrictions than those cited by Dr. Mather" in October 2005, her RFC assessment was supported by his medical reports.  *Id.*

At step four, the ALJ found Mr. Hurley was unable to perform any past relevant work through the DLI.  *Id.*  At step five, the ALJ found there were jobs that existed in significant numbers in the national economy that Mr. Hurley could have performed through the date last insured.  *Id.*  These jobs included those provided by the VE that are performed at the light level of exertion, such as an assembler, hand packer, and hand sorter, which would accommodate the need to change position every hour.  R. 24.  The ALJ rejected the argument made by Ms. Hurley's counsel at the hearing that Mr. Hurley would have had to take unscheduled breaks, which the VE testified would have made him unemployable, as "there is no corroborating evidence of such a restriction . . . ."  *Id.*

Thus, the ALJ concluded Mr. Hurley was not disabled under the Social Security Act.  R. 25.

## II.  LEGAL STANDARDS

## A.    Standard of Review

The "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  A decision by an ALJ becomes the Commissioner's final decision if the Appeals Council denies a request for review. *Sims v. Apfel*, 530 U.S. 103, 106-07 (2000).  Under such circumstances, the district court reviews the decision of the ALJ. *Id.*  Judicial review is limited to determining whether the decision is supported by substantial evidence in the record and whether the ALJ applied the correct legal standards in reaching his decision. *Nelms v. Astrue*, 553 F.3d 1093, 1097 (7th Cir. 2009).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  A "mere scintilla" of evidence is not enough. *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002).  Even when there is adequate evidence in the record to support the decision, the findings will not be upheld if the ALJ does not "build an accurate and logical bridge from the evidence to the conclusion." *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008).  If the Commissioner's decision lacks evidentiary support or adequate discussion of the issues, it cannot stand. *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009).

Though the standard of review is deferential, a reviewing court must "conduct a critical review of the evidence" before affirming the Commissioner's decision. *Eichstadt v. Astrue*, 534 F.3d 663, 665 (7th Cir. 2008).  It may not, however, "displace the ALJ's judgment by reconsidering facts or evidence, or by making independent credibility

determinations." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). Thus, judicial review is limited to determining whether the ALJ applied the correct legal standards and whether there is substantial evidence to support the findings. *Nelms*, 553 F.3d at 1097. The reviewing court may enter a judgment "affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

**B.      Disability Standard**

Disability insurance benefits are available to a claimant who can establish she is under a "disability" as defined in the Social Security Act. *Liskowitz v. Astrue*, 559 F.3d 736, 739-40 (7th Cir. 2009). "Disability" means an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An individual is under a disability if she is unable to do her previous work and cannot, considering her age, education, and work experience, partake in any gainful employment that exists in the national economy. 42 U.S.C. § 423(d)(2)(A). Gainful employment is defined as "the kind of work usually done for pay or profit, whether or not a profit is realized." 20 C.F.R. § 404.1572(b).

A five-step sequential analysis is utilized in evaluating whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i-v). Under this process, the ALJ must inquire, in the following order: 1) whether the claimant is engaged in substantial gainful activity; 2) whether the claimant has a severe impairment; 3) whether the claimant's impairment meets or equals a listed impairment; 4) whether the claimant can perform past relevant work; and 5) whether

the claimant is capable of performing other work. *Id.* Once the claimant has proven he cannot continue his past relevant work due to physical limitations, the ALJ carries the burden to show that other jobs exist in the economy that the claimant can perform. *Schmidt v. Astrue*, 496 F.3d 833, 841 (7th Cir. 2007).

## III. DISCUSSION

Ms. Hurley raises the following issues in support of her motion: (1) whether the ALJ erred in failing to find a closed period of disability lasting longer than twelve months; (2) whether the ALJ failed to properly weigh the evidence from Mr. Hurley's treating physician; (3) whether the ALJ's credibility finding was "patently wrong;" and (4) whether the ALJ properly considered Mr. Hurley's limitations due to asthma.

As explained more fully below, the Court agrees with Ms. Hurley on her first argument that the ALJ erred in not specifically analyzing whether Mr. Hurley met the twelve-month durational requirement. However, the ALJ's decision was supported by substantial evidence at least as of January 28, 2005, when Dr. Mather released Mr. Hurley to a "heavy" work capacity. Since Mr. Hurley did not apply for benefits until March 20, 2007, his claim for DIB is untimely pursuant to 20 C.F.R. § 404.320. Therefore, the Court must affirm the ALJ's unfavorable decision.

## A. The ALJ Failed to Properly Consider Whether Mr. Hurley Was Entitled to a Closed Period of Disability.

Ms. Hurley argues that the ALJ erred by failing to specifically discuss whether Mr. Hurley was entitled to a closed period of disability between August 9, 2003, the alleged onset

date, and January 28, 2005, when Dr. Mather released him to return to work (a total of seventeen months). Instead, the ALJ concluded:

> In terms of the claimant's alleged lower back pain, there is evidence of traumatic onset when the claimant injured his back at work on August 9, 2003. There is also evidence of disc herniation, with associated radiculopathy. However, this condition was treated successfully with surgery and therapy, with relief of most of his back pain and resolution of his lower extremity pain and numbness.

R. 21. The ALJ appears to acknowledge that Mr. Hurley's condition may have been disabling as of August 9, 2003, prior to the surgery. She also concluded that surgery performed on June 1, 2004 was effective in eventually relieving most of his symptoms. However, she does not identify at what point after the operation his condition improved such that he was capable of performing substantial gainful activity ("SGA"), and whether Mr. Hurley may, in fact, have been disabled for a limited period of more than twelve months.

The ALJ's reasoning was deficient in light of 42 U.S.C. § 423(d)(1)(A) and SSR 82-52. The SSA's definition of disability sets forth a durational requirement that a claimant be unable to engage in any SGA due to an impairment that *has lasted* or can be expected to last for at least twelve months. 42 U.S.C. § 423(d)(1)(A) (emphasis added). However, "the possibility that ability to engage in SGA may be restored despite the impairment(s) (e.g., through rehabilitation) does not preclude a finding of 'disability.'" SSR 82-52. Therefore, even an individual expected to make a full recovery may still meet the durational requirement if he remains disabled during a period of therapy and rehabilitation. *Id.*

The ALJ clearly did not conduct an analysis of whether Mr. Hurley was entitled to a period of benefits that would have ended at some point following his recovery from surgery. Rather, she determined Mr. Hurley's RFC by adopting the restrictions given by Dr. Mather in October 2005.  R. 23.  This opinion, and the one Dr. Mather gave in January 2005 that Mr. Hurley could do heavy-duty work, do not reflect the pre-surgery period of Mr. Hurley's lumbar disk herniation that the ALJ acknowledged constituted a "severe" impairment. R. 18-19.  Nor do they reflect the not insignificant post-operative period, which shows ongoing recovery.

In fact, the records from the relevant time frame would not support a finding that Mr. Hurley was ready to return to work immediately following his June 1, 2004 operation.  Dr. Mather's July 19, 2004 note indicated that Mr. Hurley was recovering but was wearing a prescribed back brace and taking three to four Norco a day.  R. 273-74.  It was not until August 30, 2004, as the ALJ noted, that Mr. Hurley had some soreness, but good range of motion and normal motor strength, and November 14, 2004 that Dr. Mather recommended a work-conditioning program.  R. 21-22.  Dr. Mather did not release Mr. Hurley back to heavy-duty work until January 28, 2005, although this was modified in October 2005 with further restrictions.  R. 22.  Thus, the period of recovery and therapy following the surgery may have pushed Mr. Hurley past the twelve-month mark, and the ALJ erred in determining Mr. Hurley's RFC for the entire period of eligibility based only on his condition in January and October of 2005.

This error would normally require that the case be remanded to the SSA for reconsideration. However, as explained below, the critical question in this case becomes whether Mr. Hurley was entitled to benefits beyond January 28, 2005. If not, then the untimeliness of Mr. Hurley's application for DIB may preclude any recovery.

**B.     The ALJ's Conclusion was Supported by Substantial Evidence as of January 28, 2005.**

Ms. Hurley argues that not only was Mr. Hurley entitled to benefits through January 28, 2005, but he was entitled to ongoing benefits beyond that time, ending only with his death in 2008. Ms. Hurley argues that the ALJ's finding that Mr. Hurley was not disabled during that time was deficient because she did not consider the opinion of Dr. Manatt, her credibility finding was deficient, and she failed to account for limitations noted by the state agency physician due to asthma. The Court considers each argument in turn.

**1.     The ALJ Sufficiently Considered Evidence From Dr. Manatt.**

An ALJ must consider all of the relevant evidence of record, and may not selectively pick through medical reports to support her conclusion while ignoring relevant conflicting evidence. *Myles v. Astrue*, 582 F.3d 672, 678 (7th Cir. 2009). However, "the ALJ is not required to address every piece of evidence or testimony presented." *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009). The question is thus not whether the ALJ cited every single piece of medical evidence, but rather whether her opinion reflects a comprehensive review of the evidence such that she has built a "logical bridge" from evidence to conclusion.

Ms. Hurley contends the ALJ selectively reviewed medical records from Dr. Manatt, Mr. Hurley's general physician, by only citing those where Mr. Hurley did not complain of back pain. Ms. Hurley points to other records between August 2003 and July 2005, not cited by the ALJ, where pain complaints are noted and reference is made to Vicodin prescriptions. R. 209, 211, 213, 215-17. Ms. Hurley also takes issue with the ALJ's failure to weigh Dr. Manatt's statement in a November 12, 2003 record that "He is totally disabled at this present time from the workman problems." R. 216.

The ALJ's evaluation of Dr. Manatt's records does not make entirely clear what specific weight she gave to Dr. Manatt's findings, nor does she acknowledge those occasions Mr. Hurley did complain of pain or Dr. Manatt's treatment with Vicodin. However, the ALJ's analysis reflects that she reviewed the substance of Dr. Manatt's records but decided to rely more heavily on the opinion of Dr. Mather, the specialist treating Mr. Hurley specifically for his back condition. An ALJ need not necessarily make an explicit statement that she gave "*x* weight" to one doctor and "*y* weight" to another, so long as the Court can "gauge with some accuracy the relative weight the ALJ assigned to each doctor's opinion." *Robinson v. Astrue* 667 F. Supp. 2d 834, 849 (N.D. Ill. 2009). Here, it was enough that the ALJ explained she was giving greater weight to Dr. Mather by referencing the less supportive evidence from Dr. Manatt and the reviewing physicians. Furthermore, the ALJ noted that "there are no other opinions identifying greater limitations or restrictions than those cited by Dr. Mather . . . ." R. 23. The ALJ even gave Mr. Hurley the benefit of the doubt and adopted the greater restrictions given by Dr. Mather in October 2005, although this

was after Mr. Hurley's DLI of June 30, 2005. Therefore, Claimant's argument on this point fails to raise an issue that would require remand.

## 2. The ALJ's Credibility Finding Was Sufficient.

When faced with a claimant alleging subjective symptoms such as pain, an ALJ evaluates the credibility of testimony relating to the intensity, persistence, and effects of those symptoms. 20 C.F.R. 404.1529(c); SSR 96-7p. The ALJ considers the testimony in light of the entire record and must justify the credibility finding with specific reasons. *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009); *see also Golembiewski v. Barnhart*, 322 F.3d 912, 916 (7th Cir. 2003) (the reasoning for a credibility finding cannot be implied, but must be specifically made clear). The ALJ must consider several factors, including the individual's daily activities, the location, frequency, and duration of the symptoms, aggravating factors, medication and its effects, and other treatment. SSR 96-7p. Since the ALJ is in the best position to observe witnesses, however, her credibility finding is given "considerable deference" and will be overturned only if it was "patently wrong." *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006).

In the present case, the ALJ considered the credibility of both Ms. Hurley's hearing testimony and Mr. Hurley's written statements in his submissions to the SSA. R. 21. She concluded that Mr. Hurley's impairments could reasonably have caused his alleged symptoms, but that the "statements of [Mr. Hurley and Ms. Hurley] concerning the intensity, persistence and limiting effects of these symptoms after the back surgery are not credible and limiting effects of these symptoms after the back surgery are not fully credible." R. 21. The

ALJ was particularly concerned with Ms. Hurley's hearing testimony because "it is difficult to say with any certainty whether these limits were as bad in 2005 as they were in 2006 when he started getting neck pain or in 2007 after he was involved in a motor vehicle accident." *Id.* The ALJ therefore looked to contemporaneous records from Drs. Manatt and Mather in 2004 and 2005 that reflected improvement in Mr. Hurley's condition, which she concluded undermined the statements from both Mr. and Ms. Hurley.

The Court cannot find the ALJ's credibility finding "patently wrong." The ALJ considered the specific limitations Mr. Hurley cited in his application, including a very limited ability to stand or walk due to extreme pain. She also considered Ms. Hurley's testimony that Mr. Hurley's pain limited him from doing yard work and that he slept a great deal. However, the ALJ was unable to determine from Ms. Hurley's statements to what extent Mr. Hurley's limitations were the result of the August 2003 accident or whether they reflected later problems, including a 2007 car accident, that went beyond his DLI. The ALJ therefore looked to the medical records from Drs. Manatt and Mather for the relevant time period and noted that they showed an improvement in symptoms during late 2004 and through the DLI in June 2005. Examination findings during that time period also showed improved functionality. Dr. Mather released Mr. Hurley to "heavy-duty work" in January 2005. Therefore, the ALJ reasonably concluded that Mr. and Ms. Hurley's statements were not wholly consistent with the medical evidence, and sufficiently explained her reasons for so finding. Given the deference due to the ALJ, her credibility finding is affirmed.

**3.      The ALJ Sufficiently Considered Mr. Hurley's Limitations Due to**

**Asthma.**

Although Mr. Hurley's back impairment was the primary impetus for his application for DIB, it was also noted by state reviewing physician Dr. Pilapil that Mr. Hurley should avoid concentrated exposure to fumes, odors, dusts, poor ventilation, etc. due to asthma symptoms. The ALJ cited this evidence in her opinion, but she did not include it in her hypothetical to the VE. R. 23. Ms. Hurley contends that the job titles cited by the VE, which included assembler, hand packer, and hand sorter, involve factory-type work that could have exposed Mr. Hurley to environments that would exacerbate his asthma symptoms. Ms. Hurley argues these findings are inconsistent with the limitation given by Dr. Pilapil.

An ALJ is required to consider all of the relevant evidence when determining an individual's RFC, including the combined effect of all impairments. SSR 96-8p. However, she need not "provide complete written evaluation of every piece of testimony and evidence." *Nelms v. Astrue*, 553 F.3d 1093, 1099 (7th Cir. 2009). Here, the ALJ did consider Mr. Hurley's asthma limitations when formulating the RFC, including the opinion that he should avoid concentrated exposure to fumes, etc. The ALJ determined that, despite these restrictions, Mr. Hurley could still perform substantially the full range of medium work, and this was the hypothetical she provided to the VE. In essence, the ALJ assumed that some medium work existed that would not present a threat of concentrated exposure to dust, fumes, odors, and poor ventilation. The Seventh Circuit has held that this is an appropriate conclusion for an ALJ to make and does not require a remand. *Nelms*, 553 F.3d at 1099.

**C.    Mr. Hurley's Application Was Untimely.**

Having concluded that the ALJ's decision was deficient only as to the closed period of August 9, 2003 through January 28, 2005, the Court would ordinarily remand the case back to the ALJ for further consideration. However, Social Security regulations make clear that to qualify for a "period of disability," an individual must "file an application while disabled, or no later than 12 months after the month in which your period of disability ended." 20 C.F.R. § 404.320(b)(3). Even assuming that Mr. Hurley was disabled through January 28, 2005, he would have had until February 2006 to file an application for benefits. Mr. Hurley's application was not submitted until March 2007. Therefore, Mr. Hurley's application for benefits was untimely, and he is not entitled to benefits.

## IV. CONCLUSION

**For the reasons set forth in this opinion, the Court affirms the ALJ's decision, denies Claimant's request for reversal or remand, and grants the Commissioner's motion for summary judgment.**

**SO ORDERED THIS 19th DAY OF MAY, 2010.**

_____
**MORTON DENLOW**
**UNITED STATES MAGISTRATE JUDGE**

**Copies sent to:**

Cody Marvin                                    Michele Fox
Barry A. Schultz                               Assistant United States Attorney

The Law Offices of Barry A. Schultz, P.C.
1601 Sherman Avenue, Suite 510
Evanston, IL 60201

Counsel for Plaintiff

219 South Dearborn Street
5th Floor
Chicago, IL 60640

Carole J. Kohn
Assistant Regional Counsel
200 West Adams Street, Suite 3000
Chicago, IL 60606

Counsel for Defendant